In the Matter of CLIFFORD KINNEY and Others, Children under Sixteen Years of Age.

Children's Court, Otsego County, May 29, 1934.

*Jay O. Joslyn*, petitioner, in person.

*Dennis J. Kilkenny, Otsego County Attorney*, for petitioner and for the County Commissioner of Public Welfare.

*Clifford Kinney*, in person, and by *Patrick A. McCabe*, his friend.

VAN WOERT, J.   J. O. Joslin, town welfare officer of the town of Exeter, by due petition, represents that the four minor children of Clifford Kinney are neglected on the ground that they are under such improper guardianship and in such a condition of want as to endanger their health in that the father, Clifford Kinney, refuses to work and provide food, shelter and clothing for them.

Upon an adjourned hearing at Cooperstown on May 28, 1934, the father and mother of said children were present and the matter proceeded to trial and investigation.

The acceptable evidence satisfactorily reveals the following circumstances:

Clifford Kinney, the father, owns a small place in the town of Exeter worth substantially $600, but subject to mortgage incumbrance of $250.  He has no well-established occupation, but has sought to maintain himself and his family for some time through " odd jobs " as an automobile mechanic and general handy man of the neighborhood.  During the winter 1933–34 he was employed as a Civil Works Administration worker.  This continued until March, 1934.  Then ensued a period of about six weeks when he was without employment and tried to maintain himself and the family independently.

During that time the growing necessities of his family were such that on or about May twelfth he made an appeal for employment under the Otsego County Work Relief Program and on that date signed a formal application on a blank provided by such agency. The last paragraph of the application reads as follows: " It is also understood that if I am employed on work relief I will deposit the 1934 license plates from my automobile with the work bureau so long as I am employed by them."   Kinney modified this paragraph by inserting before the word " deposit " the word " not," thereby declining to accede to such requirement.

Following such application, an investigation was made by Kenneth Wick, employed by the welfare department.  Wick proceeded to survey the home and its requirements and determined that a proper budget for the maintenance of the home in all its incidents

was eleven dollars and forty-three cents per week. This determination was made May 16, 1934. There was and is available for Kinney public work involving twenty-four hours of service each week, for which he would receive nine dollars and the difference between the nine dollars and the eleven dollars and forty-three cents determined as proper and necessary for the maintenance of his family will be made up by direct relief from the welfare agencies, unless Kinney is able to earn that difference himself. It was understood and arranged that Kinney might work independently and that the automobile owned by him might be used if necessary in his work. Kinney refused this program and upon questioning by the court stated that he declined to turn in his license plates as in his judgment such a requirement was " unreasonable," and when further questioned as to why it was unreasonable, stated that it would be " inconvenient " for him.

The family are dependent and receiving public aid through the welfare officers. It is not seriously contended that the children are undernourished or not properly cared for in the home. In fact, it is quite clear that the estimable mother is devoted to her children and has done remarkably well in their care and nurture in view of the limited means at her disposal.

The problem before the court is whether or not under such circumstances the children may be held to be " neglected."

We seek in vain any decided case resting on similar facts. The Children's Court Act (Laws of 1922, chap. 547, as revised by Laws of 1930, chap. 393, § 2, subd. 4) defines a neglected child under seven classifications. The two which are appropriate for consideration are: "(a) Who is without proper guardianship," and "(h) Who is in such condition of want or suffering or is under such improper guardianship or control as to injure or endanger the morals, and/or health of himself or others."

There is presented a definite and clear-cut case of dependency of these children, and although the constitutional justification for the erection of the Children's Courts provides for the consideration of " delinquent, neglected and dependent children " it is notable that the Legislature did not include " dependent " children within its classifications. On the contrary, the Legislature departed from the constitutional authority and did provide for destitute children and defines such a " destitute " child as one " who through no neglect on the part of its parent is destitute or homeless, or in a state of want or suffering due to lack of sufficient food, clothing, shelter, medical or surgical care."

The respondent father contends that his children might be held to be " destitute " children in that their condition of want is due

to no fault on his part, but those in support of the petition assert that the dependency of these four children is directly due to the fault of the father in that he refuses the work offered him under the welfare rules. Accordingly, the entire controversy revolves about the regulations as to the granting of work relief.

That a broad discretion is conferred upon welfare officers in granting relief is clear. (*City of Albany* v. *McNamara*, 117 N. Y. 168; *Matter of Chamberlain*, 73 Misc. 256.) In fact, such discretion on the part of welfare officers is very nearly absolute under the law. Yet no one shall be seen to suffer unduly and the humanitarian principles of our government do not permit the innocently unfortunate to languish or die. They should and must be cared for.

On the other hand, in these days of economic distress, when thousands feel the pinch of poverty, most of them entirely worthy and victims of misfortune, and when the obligation for maintaining them falls upon the utilization of public funds, which in turn are derived from others who have been themselves distressed by way of decreasing incomes and increasingly heavy tax burdens, it is quite appropriate and necessary that reasonable regulations be promulgated and enforced by public officials in dispensing public moneys so derived. Public officers would be open to just and proper criticism if, in these days, they should expend moneys derived from taxes in aid of those who indulge in luxury. Accordingly, I cannot see that the requirement that those receiving public relief should surrender license plates is unreasonable, particularly when in any individual case it is provided that necessary use of the automobile for the purpose of increasing the earning power or income of the individual is preserved.

The respondent, Clifford Kinney, has placed his family in a condition of abject dependency by his arbitrary and unreasonable refusal to yield to a proper rule. Although there is no case for our guidance I believe that children who are made public charges under such circumstances are " neglected " children, and that the act of the father in subjecting them to the ignominy of public relief, which might well have been avoided by his acquiescence in a just regulation, are without proper guardianship, and I am constrained to hold under the circumstances in this case that these children are " neglected " children.

This I do with extreme reluctance as it is clear that the mother and the children are without fault and subject to no criticism whatever.

This proceeding has been prosecuted and defended with asperity and without that calmness that should ever accompany the solemn consideration of the plight of children. Some point has been made

that the respondent father is an officer of an organization composed of those receiving public aid and it is true that upon the hearing he was informally represented by an officer of such an organization. The determination in this case is wholly independent of such consideration. The right of any group or class of citizens to organize for the purpose of protecting or advocating their assumed rights, liberties and privileges is not open to criticism so long as their acts and manifestations are orderly and contain no overt threat to government. This is a fundamental American right, generally accepted.

In the present case, however, the respondent, in my judgment, has arbitrarily and unreasonably flouted a proper regulation, and by his own act continues without warrant his wife and his four children in an unnecessary state of want and dependency.

The four children are held to be " neglected," and the matter of their care under section 22 of the Children's Court Act will be considered at the Cooperstown term of this court upon the fourth day of June at ten A. M.